EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cobra Acquisitions, LLC<br><br>Peticionario<br><br>v.<br><br>Municipio de Yabucoa; Autoridad de Energía Eléctrica, Estado Libre Asociado de Puerto Rico<br><br>Recurridos | Certiorari<br><br>2022 TSPR 104<br><br>210 DPR \_\_\_\_ |

Número del Caso: AC-2021-35


Fecha: 15 de agosto de 2022


Tribunal de Apelaciones:

        Panel III


Abogados de la parte peticionaria:

        Lcdo. Javier Rivera Longchamps
        Lcda. Mariana Ortiz Colón


Abogados de la parte recurrida:

        Lcdo. Luis Francisco Colón Conde
        Lcdo. Carmen De. Conde Torres
        Lcda. Luisa S. Valle Castro


Materia: Ley de Municipios Autónomos y Procedimiento Civil - No es necesario agotar remedios administrativos cuando se cuestiona la autoridad de un municipio para cobrar un arbitrio de construcción; cuando una parte solicita un remedio en la alternativa que debe agotar remedios administrativos, y no los agotó, el Tribunal deberá desestimar el caso.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cobra Acquisitions, LLC

    Peticionario

        v.                     AC-2021-0035

Municipio de Yabucoa;
Autoridad de Energía
Eléctrica, Estado Libre
Asociado de Puerto Rico

      Recurridos

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 15 de agosto de 2022.

En esta ocasión debemos resolver si un contratista debe agotar los remedios administrativos cuando pretende impugnar la facultad de un municipio para cobrar el arbitrio de construcción de una obra por encargo de una corporación pública. Ello mientras también cuestiona la cantidad impuesta por dichos arbitrios.

Por los fundamentos que exponemos, se resuelve que cuando se cuestiona la autoridad de un municipio para cobrar un arbitrio de construcción, no es necesario agotar remedios administrativos. Asimismo, resolvemos que si una parte solicita un remedio en la alternativa que debe agotar remedios administrativos, y no los

agotó, el Tribunal deberá desestimar el caso.

**I**

Debido a los daños que causó el paso de los huracanes Irma y María a la infraestructura del país y al sistema de distribución y transmisión de energía eléctrica de la Autoridad de Energía Eléctrica ("AEE"), el 19 de octubre de 2017 la AEE y Cobra Acquisitions, LLC ("Cobra")[1] suscribieron un contrato de *Emergencia para la Reconstrucción de la Red Eléctrica de la AEE*. Luego suscribieron un segundo contrato extendido el 26 de mayo de 2018 con vigencia hasta el 29 de mayo de 2019 (en conjunto y en lo sucesivo ambos contratos denominados "Contratos").

Como parte de los esfuerzos de recuperación y restablecimiento del sistema eléctrico de Puerto Rico, la AEE, conforme a los Contratos, le solicitó a Cobra que trabajase en la demarcación geográfica del Municipio de Yabucoa ("Municipio"). Desde el 2017 hasta el 25 de mayo 2019, Cobra realizó los servicios de restablecimiento y recuperación a la red eléctrica para la AEE. Cobra no presentó una *Declaración de Actividad de Construcción* ante el Municipio previo a proveer sus servicios. El Municipio tampoco la reclamó.

---

[1] Cobra es una compañía foránea de responsabilidad limitada organizada bajo las leyes del Estado de Delaware y debidamente autorizada por el Departamento de Estado para hacer negocios en Puerto Rico. A tenor con lo dispuesto en los Contratos, Cobra se comprometió a proveer mano de obra, supervisión, herramientas, equipo y materiales necesarios para realizar los servicios de restauración en varias localizaciones de servicio de la AEE tras el paso de los huracanes por Puerto Rico.

Cobra adujo que el 20 de marzo de 2018 recibió una carta del Director de Finanzas del Municipio. En esta, le comunicó a Cobra que recibió, inicialmente, dos facturas del proyecto de energización en Yabucoa. Expuso que, como las dos facturas fueron por la cantidad total de $9,000,000.00, correspondía el pago del 5% por concepto de arbitrios de construcción.[2]

Por otra parte, el 15 de agosto de 2018 la Oficina Central de Recuperación y Reconstrucción de Puerto Rico emitió un memorando a todos los contratistas que trabajaban en el restablecimiento del sistema eléctrico del país para que le sometieran todos los requerimientos de pago de contribuciones que habían solicitado los municipios. De conformidad, Cobra envió el requerimiento y oportunamente informó al Municipio. El 1 de octubre de 2018 el Municipio le requirió información a Cobra y solicitó copia de las facturas y certificaciones de trabajos hechos en Yabucoa. Además, requirió copia de los contratos entre Cobra y la AEE para trabajos en el Municipio y evidencia de pago de los arbitrios de construcción conforme a la Ley Núm. 81-1991, conocida como la Ley de Municipios Autónomos de Puerto Rico, según enmendada, 21 LPRA ant. sec. 4001 et seq. ("Ley de Municipios Autónomos").

El 14 de noviembre de 2018, notificada el 27 del mismo mes, el Municipio expidió una *Notificación Preliminar de*

---

[2] Según Cobra, el Municipio le comunicó que la Ordenanza Municipal Núm. 21, Serie 2005-2006, establece que todo proyecto hasta $15,000,000.00 pagaría un 5% de Arbitrios de Construcción y, de sobrepasar los $15,000,000.00, se cataloga como un megaproyecto y se cobraría un 7% por concepto de Arbitrios de Construcción del total facturado por el proyecto. Véase *Demanda*, Apéndice, pág. 7.

*Deficiencia – Arbitrios de Construcción*.[3] El Municipio expuso que, tras estimar en $400,000,000.00 los trabajos de construcción hechos en Yabucoa bajo los contratos de construcción con la AEE, procedía aplicar el 7% de arbitrio de construcción.[4] En consecuencia, el Municipio requirió el pago de arbitrios de construcción por un total de $28,000,000.00.[5] Tras la ausencia de pago por parte de Cobra, el 11 de enero de 2019 el Municipio le envió a esta una *Notificación Final de Deficiencia de Arbitrios de Construcción* y le instruyó de su derecho de revisión judicial.

El 30 de enero de 2019 Cobra le solicitó al Municipio que reconsiderara la determinación preliminar de las alegadas deficiencias en concepto de arbitrios. En la alternativa, solicitó que se celebrara una vista para presentar sus argumentos. En la solicitud, Cobra adujo que la *Notificación Preliminar* no indicaba la base utilizada para determinar la cuantía exigida en cobro de los arbitrios, no enunciaba bajo qué contrato exigían el pago, el periodo comprendido para los arbitrios, las partidas ajustadas, el concepto de la partida exigida ni la fase a la cual pertenecían. Además, solicitó que se aclararan los cómputos y fundamentos para la alegada deficiencia dado que no se desprendían de las comunicaciones cursadas.

---

[3] Apéndice, págs. 22-23.
[4] Íd.
[5] Íd.

Posteriormente, Cobra le entregó al Municipio el detalle de las facturas por los servicios realizados de conformidad con los Contratos. El 17 de julio de 2019 se celebró la vista que Cobra solicitó en la Oficina del Director de Finanzas del Municipio. Luego, el 5 de agosto de 2019 el Municipio le cursó a Cobra una segunda *Notificación Final de Deficiencia de Arbitrios de Construcción*. En esta, el Municipio expuso que la actividad de construcción tributable era de $178,451,578.50, por lo que procedía aplicar el arbitrio del 7% y, por tanto, Cobra le debía a la municipalidad el total de $12,491,610.50. Además, se le advirtió a Cobra que, conforme al Art. 2.007(e) de la Ley de Municipios Autónomos, supra, era un requisito jurisdiccional efectuar el pago de la deficiencia notificada como condición para atender cualquier demanda de impugnación de la determinación final.

Inconforme, el 26 de agosto de 2019 Cobra presentó una *Demanda* de sentencia declaratoria contra el Municipio, la AEE y el Estado Libre Asociado de Puerto Rico ("ELA") sobre pago de arbitrios de construcción. En esta, cuestionó principalmente la facultad del Municipio para imponerle un arbitrio de construcción por constituir una imposición contributiva sobre la AEE. Solicitó que se le aplicara la exención en el pago de arbitrios de construcción de la cual goza la AEE por virtud de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, Ley Núm. 83 de 2 de mayo de 1941, 22 LPRA sec. 191 et seq. y la Ley de Municipios Autónomos, supra. Conjuntamente, requirió que se le ordenara al

Municipio cancelar la deficiencia por concepto de arbitrios de construcción y que se le impusiera el pago de honorarios de abogado por temeridad. En la alternativa, solicitó que se ordenara al Municipio reducir la deficiencia por aquella cantidad que realmente haya constituido alguna obra o actividad de construcción.

En respuesta, el Municipio presentó una moción de desestimación de la demanda por falta de jurisdicción sobre la materia. Argumentó que Cobra tenía que pagar la deuda bajo protesta como requisito para que el foro primario tuviera jurisdicción. Para el Municipio, debido a que Cobra no pagó bajo protesta, no había culminado el trámite en el foro municipal de forma que se cumpliera con la doctrina de agotamiento de remedios administrativos por lo que el Tribunal General de Justicia carecía de jurisdicción. Adujo, además, que la exención reclamada por Cobra era inaplicable por lo que esa entidad no se encontraba exenta del pago de los arbitrios de construcción.

Cobra se opuso a la desestimación y argumentó que no tenía la obligación jurídica de pagar el arbitrio que reclamaba el Municipio bajo el fundamento de que sería permitir de forma indirecta el cobro de arbitrios que está vedado hacer directamente a la AEE. Asimismo, arguyó que no tenía que completar el procedimiento administrativo dispuesto en el Art. 2.007 de la Ley de Municipios, supra, porque no impugnaba la cantidad, sino la autoridad del Municipio de imponerle arbitrios de construcción por obras

realizadas. En consecuencia, tenía derecho a acudir al foro primario.

El 27 de marzo de 2020 el Tribunal de Primera Instancia emitió una *Resolución* en la que concluyó que cuando se impugna la autoridad en ley que tiene un municipio para imponer una contribución, y no la cuantía de esta, es innecesario agotar el procedimiento administrativo dispuesto en el Art. 2.007 de la Ley de Municipios Autónomos, supra. A tono con ello, señaló que el planteamiento principal de Cobra era que el Municipio no tenía facultad para imponer arbitrios de construcción sobre obras realizadas por encargo de la AEE. Por tanto, declaró No Ha Lugar la moción de desestimación. Razonó que, si la parte que impone el tributo no tiene la autoridad concedida por ley para exigirlo, la persona sujeta al tributo puede recurrir a un foro judicial mediante un recurso de sentencia declaratoria, pues agotar los remedios administrativos resultaría innecesario.

Inconforme con dicho dictamen, el Municipio presentó un recurso de *certiorari* ante el foro apelativo. Sostuvo que el foro primario erró al no desestimar la demanda por falta de jurisdicción sobre la materia. Por su parte, Cobra presentó su alegato en oposición y esbozó que no necesitaba agotar el procedimiento administrativo para cuestionar si un municipio tenía la facultad de imponer arbitrios de construcción.

El 28 de enero de 2021 el foro intermedio emitió una *Sentencia* en la que resolvió que el Tribunal de Primera Instancia erró al declararse con jurisdicción para atender

el reclamo de Cobra. Razonó que Cobra incumplió con el procedimiento administrativo y los requisitos jurisdiccionales establecidos en la Ley de Municipios Autónomos, supra, por lo que el foro primario no tenía jurisdicción para atender la controversia. En específico, expuso que como Cobra en su demanda también cuestionó la cifra del arbitrio de construcción que el Municipio le reclamó, el foro primario debía abstenerse de atender la disputa pues Cobra no agotó los remedios administrativos correspondientes.

En desacuerdo, Cobra solicitó reconsideración, pero el Tribunal de Apelaciones la denegó mediante una *Resolución*. Oportunamente, Cobra presentó una Apelación ante este Tribunal en la que alegó que el foro apelativo erró al determinar que el foro primario carecía de jurisdicción sobre la materia y al adjudicar una controversia en la alternativa que no tenía ante su consideración.

En su recurso, Cobra expuso que demandó para que se declarara que el Municipio carecía de autoridad legal para imponerle a un contratista de la AEE un arbitrio de construcción por trabajos realizados para el restablecimiento del sistema eléctrico de Puerto Rico. De no tener éxito en su argumento principal, Cobra suplicó como remedio alternativo que se redujera la contribución por la cantidad que realmente hubiere constituido obra o actividad de construcción. Fundamentó su contención en que las Reglas de Procedimiento Civil, 32 LPRA Ap. V, permiten que una parte

solicite remedios alternativos o de diversa naturaleza en la misma demanda, aunque sean remedios incompatibles e inconsistentes entre sí. Insistió que el foro primario resolvió la moción de desestimación en cuanto al remedio principal. Por tanto, planteó que el foro apelativo erró al resolver la controversia jurisdiccional al amparo del remedio alternativo.

El 8 de marzo de 2021 compareció el Municipio mediante un *Memorando En Oposición A Recurso Presentado Por Cobra Acquisitions, LLC*. Se opuso a la expedición del recurso por entender que el foro apelativo resolvió conforme a derecho. En particular, señaló que Cobra se sometió al procedimiento administrativo dispuesto por la Ley de Municipios Autónomos, supra, para luego recurrir al foro primario y alegar que no procedía agotar los remedios administrativos. Además, argumentó que Cobra no tiene derecho a las exenciones que solicita.

El 30 de abril de 2021, luego de atender la solicitud de *Apelación* que presentó Cobra, acogimos el auto como *certiorari* y expedimos.[6] Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A. Jurisdicción

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que

---

[6] El 27 de agosto de 2021 atendimos una *Solicitud de autorización para intervenir como amicus curiae* de Whitefish Energy Holdings LCC, a la cual se proveyó No Ha Lugar.

tiene ante sí. Administración de Terrenos de Puerto Rico v. Ponce Bayland Enterprises, Inc., 207 DPR 586, 600 (2021). Para adjudicar un caso, el tribunal debe tener "tanto jurisdicción sobre la materia como sobre las partes litigiosas". Íd.; Shell v. Srio. Hacienda, 187 DPR 109, 122 (2012).

Los tribunales estatales de Puerto Rico poseen jurisdicción general, lo que significa que ostentan la "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". Beltrán Cintrón v. ELA, 204 DPR 89, 101 (2020); Rodríguez Rivera v. De León Otaño, 191 DPR 700, 708 (2014). Ello significa que "cualquier parte del sistema tiene jurisdicción para resolver una causa", aunque ese tribunal no tenga competencia para ello. Freire Ayala v. Vista Rent, 169 DPR 418, 441 (2006) (citando a J. Trías Monge, El Sistema Judicial de Puerto Rico, San Juan, Ed. Universitaria, 1978, pág. 136). La jurisdicción sobre la materia es la "capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". Rodríguez Rivera v. De León Otaño, supra, pág. 708, (citando a J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, [s.l.], [Ed. del autor], 2010, pág. 25). La ausencia de jurisdicción sobre la materia:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos;

(4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. Fuentes Bonilla v. ELA et al., 200 DPR 364, 372-373 (2018).

Por tanto, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso. Beltrán Cintrón v. ELA, supra, pág. 102; Lozada Sánchez et al. v. JCA, 184 DPR 898, 909 (2012).

**B. Las alegaciones y la moción de desestimación**

Las alegaciones tienen la misión de notificar cuáles son las reclamaciones y defensas que presentan las partes. De esta manera, se bosqueja cuál es la controversia y se notifica al tribunal y a las partes cuál es la contención. Torres, Torres v. Torres Serrano, 179 DPR 481, 501 (2010). Hemos expresado que una alegación de solicitud de remedio deberá exponer una relación sucinta y sencilla de los hechos demostrativos que establezcan el alegado derecho reclamado. Álamo v. Supermercado Grande, Inc., 158 DPR 93 (2002). La Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, dispone lo siguiente:

> Una alegación que exponga una solicitud de remedio contendrá:
>
> (1) Una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio
>
> (2) una solicitud del remedio a que crea tener derecho.
>
> **Podrán ser solicitados remedios alternativos o de diversa naturaleza.** (Énfasis suplido).

El tratadista José A. Cuevas Segarra explica que la Regla 6.1 "autoriza que se soliciten remedios alternativos. Se permite que se aduzcan reclamaciones o defensas alternativas o inconsistentes". J. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Publicaciones J.T.S., Tomo II, pág. 391. En otras palabras, "[l]a parte puede suplicar remedios de distintos tipos, o en la alternativa". Íd., pág. 392.

Por el otro lado, la Regla 10.2 de Procedimiento Civil, supra, autoriza a la parte contra la cual se presente una alegación a presentar una moción de desestimación por los fundamentos siguientes: falta de jurisdicción sobre la materia; falta de jurisdicción sobre la persona; insuficiencia del emplazamiento; insuficiencia del diligenciamiento del emplazamiento; dejar de exponer una reclamación que justifique la concesión de un remedio, y dejar de acumular una parte indispensable. Conde Cruz v. Resto Rodríguez, 205 DPR 1043, 1066 (2020).

Cuando se considera una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable para la parte demandante. Rivera Sanfeliz et al. v. Jta. Dir. FirstBank, 193 DPR 38, 49 (2015); Colón Rivera et al. v. ELA, 189 DPR 1033, 1049 (2013). Ello, debido a que lo que se ataca es un vicio intrínseco de la demanda, no los hechos aseverados. R.

Hernández Colón, Derecho Procesal Civil, 5ta ed., San Juan, LexisNexis, 2010, pág. 269. Para que proceda una moción de desestimación, el Tribunal debe convencerse de forma certera que "el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". Rivera Sanfeliz et al. v. Jta. Dir. FirstBank, supra, pág. 49.

Para propósitos de la controversia que tenemos ante nuestra consideración, es indispensable examinar ambas reglas de manera conjunta. Ello responde a la máxima de hermenéutica que dispone que al interpretar una legislación se debe evaluar la totalidad de su contenido para determinar cuál es el significado de cada una de sus partes. Rolón Martínez v. Caldero López, 201 DPR 26, 40 (2018); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da Ed., San Juan, Publicaciones JTS, 1987, Vol. II, pág. 315. Así se logra hacer de la legislación un todo armónico y efectivo. Rolón Martínez v. Caldero López, supra, pág. 40. Y es que "[n]o se pueden tomar aisladamente los distintos apartados de la ley, sino que deben tomarse todos en conjunto, o sea, íntegramente". Bernier y Cuevas Segarra, op. cit., pág. 315.

Por tal razón, al interpretar la Regla 6.1 y la 10.2 de manera conjunta, podemos colegir que cuando se pretende desestimar la totalidad de una demanda que solicita remedios alternativos, se debe examinar si las alegaciones sustentan

la concesión de dichos remedios. Es decir, como las alegaciones pretenden bosquejar las distintas reclamaciones y proveer a cada una de ellas unos remedios, una moción de desestimación sobre la totalidad de la demanda debe mover la conciencia del juzgador a concluir que, si al dar por cierto las alegaciones bien hechas, no existe remedio al que la parte tenga derecho. El juzgador deberá auscultar, en ese sentido, si la parte demandante no tiene derecho alguno a que se ventile el pleito, ya sea al amparo del remedio principal o del alternativo. Tras este proceder, y luego de un examen pormenorizado, este estará en mejor posición de decidir si en efecto desestima total o parcialmente la demanda.

**C. La Ley de Municipios Autónomos y la facultad para imponer contribuciones**[7]

Nuestra Constitución establece que "[e]l poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido". Art. VI, Sec. 2, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 435. Al ser la Rama Legislativa la entidad con el poder impositivo del Estado, esta puede delegarle a los municipios su poder para imponer contribuciones. ECA Gen. Contrac. v. Mun. de Mayagüez, 200 DPR 665, 675 (2018).

---

[7] La Ley Núm. 107-2020, según enmendada, conocida como Código Municipal de Puerto Rico, 21 LPRA sec. 7001 et seq., derogó la Ley de Municipios Autónomos. No obstante, esta última es la aplicable a los hechos de esta controversia.

La Ley de Municipios Autónomos, supra, tenía como parte de sus objetivos, fomentar y propiciar la autonomía municipal. Coop. Ahorros Rincón v. Mun. Mayagüez, 200 DPR 546, 553 (2018). Ello responde a la política pública implantada que busca descentralizar el gobierno con el fin de desarrollar una mayor autonomía municipal. ECA Gen. Contrac. v. Mun. de Mayagüez, supra, pág. 688. De esta manera, la Asamblea Legislativa aprobó el Art. 2.002 de la Ley de Municipios Autónomos, supra, que le delegaba a los municipios la facultad de imponer ciertas contribuciones, derechos y licencias, entre las cuales se encontraba el arbitrio de construcción.  Íd., pág. 676; Coop. Ahorros Rincón v. Mun. Mayagüez, supra, pág. 553. Así, por medio de una ordenanza municipal los municipios podían imponer una contribución, conocida como el arbitrio de construcción, que "reca[yera] sobre el derecho de llevar a cabo una actividad de construcción y/o una obra de construcción dentro de los límites territoriales del municipio". Art. 1.003(cc) de la Ley de Municipios Autónomos, supra; Coop. Ahorros Rincón v. Mun. Mayagüez, supra, pág. 553; Const. José Carro v. Mun. Dorado, 186 DPR 113, 123 (2012); Levy, Hijo v. Mun. de Manatí, 151 DPR 292, 300 (2000).

Por otro lado, cabe resaltar que el Tribunal de Primera Instancia posee jurisdicción para dilucidar si un municipio tiene facultad para imponer un arbitrio de construcción sin la necesidad de agotar los remedios administrativos dispuestos en el Art. 2.007 de la Ley de Municipios

Autónomos, supra. En Coop. Ahorros Rincón v. Mun. Mayagüez, supra, expresamos que cuando se impugna la autoridad en ley de un municipio para imponer una contribución, y no la cuantía de esta, "resulta innecesario agotar el procedimiento administrativo dispuesto en ley Íd., pág. 556; Interior Developers v. Mun. de San Juan, 177 DPR 693, 710 (2009).[8]

Por lo anterior, hemos dicho que "el intento de cobrar contribuciones a quien no las adeuda constituye una situación excepcional en la que los tribunales pueden ejercer su jurisdicción de naturaleza extraordinaria". Alcalde de Guayama v. ELA, 192 DPR 329, 334 (2015). Véase también: Durlach Bros., Inc. v. Domenech, Tes., 47 DPR 654, 659 (1934).

El procedimiento apropiado para impugnar e impedir el cobro de contribuciones que no le corresponde pagar a una parte es el interdicto y la sentencia declaratoria. Alcalde de Guayama v. ELA, supra, pág. 334. Si una persona logra demostrar con claridad que no puede ser considerada como un contribuyente ante el arbitrio que se le pretende imponer, entonces es irrazonable obligarle a tributar para luego hacerle agotar los mecanismos administrativos y judiciales disponibles. Íd.; Yiyi Motors, Inc. v. ELA, 177 DPR 230, 279 (2009). Por tanto, reiteramos que si una parte no ostenta la autoridad jurídica para imponer una contribución, no se le

---

[8] Véanse: Alcalde de Guayama v. ELA, 192 DPR 329 (2015); Yiyi Motors, Inc. v. ELA, 177 DPR 230 (2009); Mun. Trujillo Alto v. Cable TV, 132 DPR 1008, 1011 (1993); Compañía Azucarera del Toa v. Municipio, 76 DPR 331, 337 (1954).

puede exigir a quien impugna esa autoridad agotar los procedimientos administrativos.

## III

La controversia que nos presenta Cobra es si el Tribunal de Apelaciones erró al desestimar la demanda de sentencia declaratoria porque, al amparo de uno de los remedios alternativos que solicitó, presuntamente era necesario que se agotaran los remedios administrativos. Es decir, la cuestión que debemos resolver es si el Tribunal de Primera Instancia carece de jurisdicción para atender la impugnación de la facultad legal del Municipio para imponer un arbitrio de construcción porque, en la alternativa, se impugnó la cuantía de este y esto último, según se alega, requiere agotar remedios administrativos.

Cobra argumentó que el Tribunal de Apelaciones debió evaluar si la moción de desestimación procedía en derecho a la luz de la contención principal: si el Municipio puede cobrarle a Cobra el arbitrio de construcción de una obra por encargo de la AEE. Tiene razón. Como vimos, cuando se cuestiona la facultad de un municipio de imponer una contribución, no es necesario agotar los remedios administrativos y, por tanto, el foro primario tiene jurisdicción para atender dicha controversia.

Al evaluar una moción de desestimación, se deben dar por ciertas todas las alegaciones bien fundamentadas hechas en la demanda e interpretarlas a favor de la parte demandante. Recordemos que solamente corresponde desestimar

una demanda cuando el tribunal se convenza de que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiere probar en apoyo de su reclamación. Si existen reclamaciones alternativas, para que proceda la desestimación de la totalidad de la demanda, el adjudicador se debe convencer de que ninguna de las reclamaciones, aunque sean inconsistentes entre sí, justifica la concesión de un remedio. Si el tribunal entendiese que una reclamación en particular no justifica la concesión de un remedio, pero otras reclamaciones sí, entonces no procede desestimar toda la demanda, sino solamente aquellas que no procedan en derecho.

El Municipio sostiene que el foro apelativo no erró al desestimar la *Demanda* en su contra pues no tiene jurisdicción sobre la materia. Explica que Cobra no agotó el procedimiento administrativo dispuesto en la Ley de Municipios Autónomos, <u>supra</u>, dado que se negó a pagar la deuda bajo protesta. **No obstante, de la demanda se desprende que la reclamación principal de Cobra impugna la capacidad del Municipio de imponerle el arbitrio por construcción.**

De un examen puntilloso de la totalidad de los documentos del expediente de autos, surge de manera clara e inequívoca que Cobra impugnó la autoridad del Municipio para imponerle un arbitrio a las obras de reconstrucción del sistema eléctrico que realizó bajo contrato con la AEE. Así, es forzoso concluir que Cobra podía acudir al foro primario sin tener que agotar los remedios administrativos. Ello, pues

reconocemos que la controversia medular del caso es establecer si Cobra tiene una exención sobre los arbitrios de construcción debido a su relación con la AEE, por lo que el remedio principal que busca Cobra no lo obliga a agotar remedios administrativos. El hecho de que exista un remedio en la alternativa mediante el cual se cuestiona la cuantía del arbitrio de construcción —y ello podría requerir agotar los remedios administrativos— no significa que se deba desestimar la totalidad de la demanda.

Ahora bien, para que la resolución de esta controversia sea práctica, el foro primario deberá examinar, en primer lugar, la procedencia del reclamo principal, a saber, si el Municipio tiene autoridad para imponerle a Cobra el tributo. De resolverse que el Municipio no tiene la autoridad, sería innecesario atender el remedio alternativo. No obstante, si el foro primario concluyera que el Municipio puede cobrar el tributo y que Cobra es considerado un contribuyente para fines del arbitrio, correspondería, en segundo lugar, examinar si se agotaron los remedios administrativos. Como en este caso Cobra no cumplió con el trámite administrativo —específicamente el pago de la deficiencia notificada para poder impugnar la cuantía— procedería desestimar el pleito. Solo así, se podrá atender cabalmente la demanda que se incoó. De esta forma, no le cerramos de plano las puertas del tribunal a Cobra y damos paso a que sus reclamos se ventilen en los méritos. Habida cuenta de que el litigio se encuentra en sus etapas iniciales, y que al interpretar las

alegaciones de la manera más favorable a Cobra esta tiene derecho a que, en esta etapa de los procedimientos, no se le descarten, este curso de acción es el más adecuado.

**IV**

Por los fundamentos antes expuestos, se revoca el dictamen recurrido y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme con lo aquí resuelto.

Se dictará sentencia de conformidad.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cobra Acquisitions, LLC

     Peticionario

        v.

Municipio de Yabucoa; Autoridad de Energía Eléctrica, Estado Libre Asociado de Puerto Rico

     Recurridos

AC-2021-0035

SENTENCIA

En San Juan, Puerto Rico, a 15 de agosto de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen recurrido y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo