ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARÍA DE LOURDES FERRÁ PIETRI Y OTROS<br><br>Apelantes<br><br>v.<br><br>MAYRA ALLEZA FERRÁ PIETRI<br><br>Apelada | KLAN202500237 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2024CV03189<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

*El respeto al derecho ajeno es la paz.*
Benito Juárez

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece la parte demandante y apelante, conformada por María Ferrá Pietri y Janine Ferrá Pietri. Ambas solicitan nuestra intervención para revocar la *Sentencia* emitida el 24 de febrero de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). En el referido pronunciamiento, el TPI declaró con lugar la *Moción en Solicitud de Desestimación* interpuesta por la parte demandada y apelada, Mayra Ferrá Pietri. Decretó que las demandantes no cumplieron con los requisitos indispensable para mover la discreción judicial para dictar la sentencia declaratoria solicitada, bajo el fundamento de ausencia de legitimación activa y falta de parte indispensable.

**I.**

La causa del título se inició el 31 de octubre de 2024, ocasión en que la parte demandante instó una *Demanda*[1] sobre sentencia declaratoria contra la parte demandada. Las hermanas demandantes

---

[1] Apéndice de la parte apelante, págs. 13-18.

Número Identificador

SEN2025_____

María y Janine son titulares de las fincas 1791 y 5295, respectivamente, cuyos predios —ambos en Villalba— fueron descritos con su cabida y colindancias en su reclamación civil. En síntesis, las demandantes solicitaron que se determinara si la servidumbre de paso que disfruta la demandada le pertenecía o no a ésta y si tenía o no su uso exclusivo. Además, peticionaron que se le ordenara a la demandada a permitir las gestiones que llevaba a cabo el agrimensor José Carrasquillo Rivera, contratado para mensurar las propiedades de las demandantes, toda vez que éstas tienen interés de tramitar la segregación de sus fincas.

Las demandantes manifestaron que, luego de citar a la demandada, las labores de agrimensura se detuvieron. A través de su representación legal, el Lcdo. Juan Medina Quintana, la demandada respondió con una carta, en la que se mencionó la naturaleza exclusiva de la servidumbre.[2] Por medio de la misiva, la demandada desautorizó el acceso del agrimensor Carrasquillo Rivera por el camino de entrada a su propiedad, ya que no existía una controversia de colindancia entre los predios.

Las demandantes, por su parte, citaron un fragmento de la Escritura Pública 33 de 12 de julio de 1988 y sostuvieron que el instrumento, si bien creó la servidumbre de paso, no dispuso un uso exclusivo; lo que tampoco surgía de las certificaciones registrales que solicitaron al Registro de la Propiedad. Agregaron que la demandada no podía impedir el uso del camino a las demandantes o a quienes necesitaran usarlo en el futuro, ya que, como requisito para poder segregar sus predios, habría que darle acceso por ese camino de servidumbre a ciertas porciones del solar a segregarse, porque de lo contrario los lotes quedarían enclavados.

---

[2] Apéndice de la parte apelante, pág. 70.

El 3 de febrero de 2025, la parte demandada —quien es titular de la finca 7219 agrupación de la finca 4539 en Villalba— presentó su *Contestación a Demanda*.[3] En esencia, negó las alegaciones de la parte demandante; y sostuvo que la única finca a la que debía servir a perpetuidad la servidumbre de paso en cuestión era a su predio, por éste estar enclavado. Aseveró también que el agrimensor Carrasquillo Rivera no necesitaba entrar a su propiedad ni a la servidumbre. Apuntó que, si las demandadas deseaban lotificar o segregar sus respectivos inmuebles, debían limitarse a las "colindancias que delimitaron sus padres hace más de 30 años y concentrarse a los límites desde el interior de sus terrenos".[4]

Para sostener su alegación responsiva, la demandada unió tres documentos: (1) Certificación Registral 2024-040637-CERT de la finca 7219 de su propiedad; (2) Resolución emitida por la extinta Administración de Reglamentos y Permisos (ARPE), fechada el 18 de marzo de 1988, que impuso como condición *sine qua non* a la segregación la constitución de la servidumbre de paso a favor del predio de la demandada; y (3) Escritura Pública 33 de 12 de julio de 1988, ante el notario público Ismael Cervoni Santiago, por la cual la demandada adquirió la finca de sus padres, Jaime Ferrá Garau y Edna Pietri Rodríguez, luego de segregarse un lote de la finca 1791, el cual funge como predio sirviente de la servidumbre de paso en controversia. El instrumento constituyó a perpetuidad la servidumbre de paso de cinco metros de ancho, por el precio de $1,000.00. El documento consignó que la servidumbre discurría desde la colindancia sur de su predio y en toda su extensión hasta desembocar en el camino municipal Cerro Gordo. A su vez, la demandada invocó varias defensas afirmativas, relacionadas con su

---

[3] Apéndice de la parte apelante, págs. 19-37.
[4] En su escrito judicial, la demandada aludió también a una disputa de índole sucesoral por la división de la herencia de la causante Edna Pietri Rodríguez, madre de las litigantes, quien falleció el 13 de noviembre de 2023.

derecho propietario y el derecho a la servidumbre de paso. Además, esbozó que la reclamación dejaba de exponer hechos que conllevaran la concesión de un remedio. Enunció, en particular, que las demandantes no habían demostrado haber sufrido un daño claro y palpable, real, inmediato y preciso, ni conexión entre el daño sufrido y la causa de acción ejercitada y tampoco alegaron que la causa de acción surgía al palio de la Constitución o de una ley. Posteriormente, la demandada presentó una moción, con el propósito de unir otro documento a su *Contestación a Demanda*; a saber: copia de los folios originales del Registro de la Propiedad de la finca 4539.[5]

Así las cosas, el 5 de febrero de 2025, la parte demandada presentó una *Moción en Solicitud de Desestimación*, al amparo de la Regla 10.2 de Procedimiento Civil, *infra*.[6] Anejó dos documentos: (1) Certificación Registral 2024-039336-CERT de la finca 1791, propiedad de María; y (2) Certificación Registral 2024-039624-CERT de la finca 5295, propiedad de Janine.

En resumen, expuso que los predios de las demandantes tenían acceso a la carretera 5520; y que el único terreno enclavado era el suyo, por lo que se constituyó la servidumbre de paso que la beneficia. Abogó que las demandantes no satisficieron los requisitos jurisprudenciales para la concesión de un remedio, ya que no alegaron un daño real ni un peligro potencial. Planteó que las demandantes meramente aludieron a un reclamo especulativo futuro, por lo que la controversia carecía de madurez. Añadió también la falta de parte indispensable, en alusión a los transmitentes del dominio, es decir, los padres de las tres hermanas.

La parte demandante instó una *Réplica a Moción de Desestimación* el 19 de febrero de 2025. Acompañó su oposición con

---

[5] Véase, Apéndice de la parte apelada, págs. 1-11. Entrada 15 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[6] Apéndice de la parte apelante, págs. 38-57.

ocho anejos:[7] (1) carta del licenciado Medina Quintana fechada el 6 de agosto de 2024; (2) Certificación Registral 2024-020197-CERT de la finca 1791 de María; (3) Certificación Registral 2024-027852-CERT de la finca 1789, propiedad de Carmen Colón Zayas; (4) Escritura Pública 23 de 26 de agosto de 2011, ante el notario público Luis Meléndez Muñoz, sobre compraventa de la finca 1791; (5) Certificación Registral 2024-027854-CERT de la finca 5295, propiedad de Janine; (6) Certificación Registral 2024-020199-CERT de la finca 7219, propiedad de Mayra; (7) Escritura Pública 33 de 12 de julio de 1988; y (8) dos fotografías de la servidumbre.

En suma, la parte demandante rechazó los planteamientos de la moción dispositiva en su contra. Reiteró que el caso versaba sobre una declaración judicial sobre si la servidumbre de paso era o no exclusiva a favor de la demandada y si ésta podía oponerse a la entrada del agrimensor Carrasquillo Rivera, para la realización del plano de segregación y mensura encomendado. Aseveró que la demandada no podía oponerse a que las demandantes segregaran sus fincas. Acotó que, si el predio de terreno por donde discurre la servidumbre de paso le perteneciera exclusivamente a la demandada, entonces, no habría predio sirviente ni dominante y tampoco constituiría una carga registral sobre la finca 1791. La demandante María, además, admitió que utilizaba a diario la servidumbre.

En cuanto a la falta de parte indispensable, la parte demandante difirió del análisis de la demandada y expresó el hecho del fallecimiento de la madre de las hermanas y que el padre no se oponía a la entrada del agrimensor a la servidumbre de paso. Finalmente, solicitó una inspección ocular.

---

[7] Apéndice de la parte apelante, págs. 59-83. Debido a que la parte apelante no incluyó todos los anejos en su *Recurso de Apelación*, refiérase a la entrada 19 del SUMAC.

Justipreciadas las posturas, el TPI dictó la *Sentencia* apelada. Enfatizó que su dictamen estaba delimitado a los factores que, a su juicio, afectaban su jurisdicción. Expresó que la reclamación sobre la exclusión de la servidumbre de paso debía ir dirigida contra las personas que les vendieron sus propiedades a las demandantes, porque éstos eran los que estaban obligados a ofrecerle una salida a la carretera, no la demandada. Así concluyó que faltaba una parte indispensable. Añadió que no existía un peligro potencial contra la parte demandante y que la reclamación carecía de una alegación específica sobre la necesidad de utilizar la servidumbre de paso, ya que los predios de las hermanas María y Janine no estaban enclavados. El TPI se basó en sendas certificaciones registrales que describían las fincas de éstas. Apostilló finalmente que las demandantes no habían sufrido ni estaban en peligro de sufrir un daño real, inmediato o preciso y que carecían de legitimación activa, por lo que estaban requiriendo una opinión consultiva.

Insatisfecha, la parte demandante acudió oportunamente ante esta curia intermedia y esbozó los siguientes señalamientos de error:

> ERRÓ EL HON. TPI AL DESESTIMAR LA DEMANDA POR ENTENDER QUE LAS DEMANDANTES NO CUMPLEN CON EL "STANDING" O CAPACIDAD PARA RADICAR LA CAUSA DE ACCIÓN, NO HAN CUMPLIDO CON LOS REQUISITOS INDISPENSABLE PARA MOVER LA DISCRECIÓN DEL TRIBUNAL PARA DICTAR LA SENTENCIA DECLARATORIA, LAS DEMANDANTES NO HAN SUFRIDO NI ESTÁN EN PELIGRO POTENCIAL DE SUFRIR UN DAÑO REAL, INMEDIATO Y PRECISO, LAS DEMANDANTES NO TIENEN LEGITIMACIÓN ACTIVA, REQUIEREN UNA OPINIÓN CONSULTIVA Y PORQUE LA DEMANDA CARECE DE MÉRITO.

> ERRÓ EL HON. TRIBUNAL AL [NO] RESOLVER LA SOLICITUD DE DESESTIMACIÓN PRESENTADA POR LA PARTE APELADA COMO UNA MOCIÓN DE SENTENCIA SUMARIA, YA QUE DICHA MOCIÓN SE CONVIRTIÓ EN UNA MOCIÓN DE SENTENCIA SUMARIA AL ESTAR ACOMPAÑADA DE DOCUMENTOS ADICIONALES. EL TRIBUNAL INCLUSO UTILIZÓ DICHOS DOCUMENTOS ANEJADOS A LA MOCIÓN DE DESESTIMACIÓN PARA APOYAR SU DECISIÓN DE DESESTIMAR.

La parte demandada presentó su postura el 4 de abril de 2025, mediante un escrito judicial intitulado *Solicitud de Desestimación.* Insistió en la falta de legitimación de las demandantes, ya que éstas planteaban una situación hipotética y especulativa y sus predios no estaban enclavados. Tildó el pleito de frívolo, el cual únicamente buscaba perturbar su derecho propietario y la servidumbre de paso.

**II.**

**A.**

El Tribunal Supremo de Puerto Rico ha definido *jurisdicción* como el poder o autoridad que ostentan los tribunales para considerar y decidir los casos y las controversias ante su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). Un caso no es justiciable si la parte no ostenta legitimación activa. **La legitimación activa es "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante"**. (Énfasis nuestro). *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 739 (2022), *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 69 (2017). Al auscultar nuestra jurisdicción, es meritorio examinar la legitimación activa para no adentrarnos a "resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". *Hernández, Santa v. Srio. de Hacienda, supra.* El Tribunal Supremo ha reiterado que este elemento de justiciabilidad compete, primero, en torno a la parte que promueve la acción y, segundo, en cuanto a los asuntos bajo adjudicación. *Id.*; *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 564 (1989); *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 723 (1980).

> Al amparo de esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y

preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge al palio de la Constitución o de una ley. *Hernández, Santa v. Srio. de Hacienda*, *supra*, y los casos allí citados.

En fin, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009), que cita a *E.L.A. v. Aguayo*, 80 DPR 552, 558-559 (1958). La prohibición de opiniones consultivas evita que los tribunales incurran en errores y protege la institución judicial. Véase, J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos,* Bogotá, Ed. Temis, 2009, págs. 97-98. Ello así, "ya que no es función de los tribunales actuar como asesores o consejeros". *Asoc. Alcaldes v. Contralor*, 176 DPR 150, 158 (2009).

**B.**

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez*, 163 DPR 738, 745 (2005). Por virtud de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, nuestro ordenamiento procesal civil dispone de varios supuestos mediante los cuales una parte puede solicitar la desestimación de una acción en su contra. Reproducimos la norma procesal:

> Toda defensa de hechos o de derecho contra una reclamación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) **Dejar de exponer una reclamación que justifique la concesión de un remedio**; (6) Dejar de acumular una parte indispensable.
>
> Ninguna defensa u objeción se considerará renunciada por haberse formulado conjuntamente con otra u otras

defensas u objeciones en una alegación responsiva o moción. Si en una alegación se formula una reclamación contra la cual la parte no está obligada a presentar una alegación responsiva, dicha parte podrá mantener en el juicio cualquier defensa de hechos o de derecho contra tal reclamación. **Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36** hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. (Énfasis nuestro).

A los fines de disponer de una moción de desestimación, el **tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda y que hayan sido aseveradas de manera clara**. *Torres Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Perfect Cleaning v. Cardiovascular,* 172 DPR 139, 149 (2007); *Colón v. Lotería,* 167 DPR 625, 649 (2006). De igual modo, la demanda no debe desestimarse a menos que se desprenda **con toda claridad y certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación**. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38 (2015).

En lo que nos compete y según esbozamos, si en una moción de desestimación fundamentada en el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* "se exponen **materias no contenidas** en la alegación impugnada, y éstas **no son excluidas** por el tribunal, la moción deberá ser **considerada como una solicitud de sentencia sumaria**". (Énfasis nuestro). Regla 10.2 de Proc. Civil, *supra; Sánchez v. Aut. de los Puertos,* 153 DPR 559, 570 (2001). De este modo, la moción estará sujeta a todos los trámites provistos por la Regla 36 de Procedimiento Civil, hasta su resolución final. *Bonnelly Sagrado et al. v. United Surety,* 207 DPR 715, 722-723 (2021).

Sobre lo anterior, nuestro Tribunal Supremo ha expresado:

**La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones**, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. **El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña**. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración. Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. (Énfasis nuestro). *Torres Capeles v. Rivera Alejandro*, 143 DPR 300, 309 (1997), que cita a *Bonnelly Sagrado et al. v. United Surety*, *supra*, pág. 723.

Ahora bien, en observancia a la Regla 8.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 8.3, "[u]na copia de cualquier documento o escrito que se acompañe como *exhibit* a una alegación se considerará para todos los efectos como parte de ésta". Al respeto, la doctrina ha mencionado que "una ventaja inicial que ofrece esta regla es que, si la parte contraria no impugna la legitimidad del escrito o documento, la parte que lo presenta no tendrá que presentarlo formalmente en evidencia para que el tribunal pueda considerarlo. Cuando surja una discrepancia entre la alegación y el documento, éste prevalecerá". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da ed., San Juan, Pubs. JTS, 2011, t. II, pág. 452. Por lo tanto, **al resolver una moción de desestimación, no se impide la consideración de documentos conocidos por la parte demandante, a pesar de que tales documentos no hayan sido incorporados a la reclamación**. *Id.*, que cita a *Cortec Industries Inc. v. Sum Holding L.P.*, 949 F 2d 42 (2do. Cir. 1991).

### C.

La Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59, gobierna lo concerniente a la solicitud de sentencia declaratoria. Acerca de su procedencia, dispone como sigue la norma procesal:

> **El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas**[,] aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. **La declaración podrá ser en su forma y efectos, afirmativa o negativa**, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37 [*Reunión para el manejo del caso*], el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario. (Énfasis nuestro).

La sentencia declaratoria se dicta cuando existe una **controversia sustancial entre partes con intereses legales adversos, con el propósito de disipar la incertidumbre jurídica**. *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 254 (2012), que cita con aprobación a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, Sec. 6001, pág. 560. Claro está, el Tribunal Supremo de Puerto Rico ha apuntado que **el promovente de una sentencia declaratoria debe ostentar legitimación activa**. *Mun. Fajardo v. Srio. Justicia et al., supra*, págs. 254-255; *Romero Barceló v. E.L.A.*, 169 DPR 460, 475 (2006). Por consiguiente, tiene que demostrar que sufrió un daño claro y palpable; que éste es real, inmediato y preciso, y no abstracto e hipotético; que existe conexión entre el daño sufrido y la causa de acción ejercitada, y que la causa de acción surge bajo el palio de la constitución o de una ley. *Mun. Fajardo v. Srio. Justicia et al., supra*, pág. 255. Así, pues, nuestro alto foro ha delimitado que la sentencia declaratoria "es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". *Alcalde de Guayama v. ELA*, 192 DPR 329, 333 (2015). A esos efectos, la doctrina ha expresado: "Si una disputa no está firmemente anclada en hechos específicos, adquiere un matiz teórico que generalmente la excluye del ámbito legítimo de la sentencia declaratoria". J.A. Cuevas Segarra, *Tratado*

*de Derecho Procesal Civil,* 2da ed., San Juan, Pubs. JTS, 2011, t. V, pág. 1790 y los casos allí citados.

**D.**

La Constitución de Puerto Rico reconoce el derecho fundamental al disfrute de la propiedad privada. Art. II, Sec. 7, Const. P.R., LPRA, Tomo 1. Claro está, nuestro Tribunal Supremo ha reiterado que el derecho a la propiedad no es absoluto. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 785 (2023); *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 603 (2021); *Mun. de Guaynabo v. Adquisición M2*, 180 DPR 206, 216 (2010). Es decir, como parte del poder inherente del Estado, se pueden establecer restricciones sobre la propiedad de los ciudadanos. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 425 (2008); *Culebra Enterprises Corp. v. E.L.A.*, 127 DPR 943, 952 (1991).

Entre las restricciones que el Estado puede establecer en propiedades privadas, se encuentran lo que se conocen como las servidumbres. El Código Civil de Puerto Rico 1930, vigente al momento en que se constituyó la servidumbre de autos, en su Artículo 465 definía las servidumbres como "**un gravamen impuesto sobre un inmueble en beneficio de otro perteneciente a distinto dueño**". (Énfasis nuestro). 31 LPRA ant. sec. 1631.[8] El inmueble a cuyo favor está constituida la servidumbre se llama predio dominante; el que la sufre, predio sirviente. *Id.*

Por otra parte, y en lo relacionado a su constitución, el Artículo 472 del mencionado Código Civil de 1930 disponía que "[l]as servidumbres se establecen por la ley o por la **voluntad de los propietarios**". (Énfasis nuestro). 31 LPRA ant. sec. 1638. Aquéllas se llaman legales; y éstas, **voluntarias**. *Id.* Un ejemplo de lo que se considera una servidumbre voluntaria es la servidumbre de paso, la

---

[8] Véase, Artículo 935 del Código Civil de 2020, 31 LPRA sec. 8501.

cual es **discontinua**, ya que se usa a intervalos más o menos largos y depende de actos del ser humano y, por lo tanto, sólo **pueden constituirse mediante negocio jurídico**. Art. 468 del Cód. Civil de 1930, 31 LPRA ant. sec. 1634;[9] *Soc. de Gananciales v. Mun. de Aguada*, 144 DPR 114, 124 (1997).

**III.**

En el **primer señalamiento de error**, las apelantes aducen que el TPI incidió al desestimar la *Demanda* por entender que las apelantes no satisficieron el requisito de legitimación activa, por no estar en peligro potencial de sufrir algún daño real, inmediato y preciso. Nos persuaden.

Como cuestión de umbral, el dictamen desestimatorio que nos ocupa surge de una moción al palio de la Regla 10.2 de Procedimiento Civil, *supra*, la cual mandata al juzgador que tome como ciertas las alegaciones fácticas de la reclamación, que hayan sido aseveradas de manera clara. Este caso, según reseñamos, versa sobre una solicitud de una declaración judicial acerca de si la servidumbre de paso, creada voluntariamente por virtud de la Escritura Pública 33, es o no exclusiva a favor de la apelada, conforme ésta reclama a través de su abogado; y si puede o no oponerse a que el agrimensor Carrasquillo Rivera realice una mensura de dicha servidumbre. El propósito de la mensura se asienta en un procedimiento de segregación de los predios pertenecientes a las apelantes, el cual ha quedado suspendido.

Es sabido que la Ley Núm. 210 de 8 de diciembre de 2015, *Ley del Registro de la Propiedad Inmobiliaria*, 30 LPRA sec. 6001 *et seq.* (Ley Núm. 210-2015), es parte del ordenamiento jurídico que gobierna la constitución e inscripción de las segregaciones. Específicamente, el Artículo 148, 30 LPRA sec. 6222, establece sus

---

[9] Véase, Artículos 937-938 del Código Civil de 2020, 31 LPRA sec. 8503-8504.

requisitos de inscripción. Entre éstos, el inciso (2) **exige un plano de inscripción**, debidamente aprobado por la dependencia gubernamental estatal o municipal correspondiente. *Id.* Asimismo, para la acreditación de la mensura de una finca, se requiere una certificación juramentada ante notario, expedida por el agrimensor licenciado que la efectuó. Art. 197 de la Ley 215-2010, 30 LPRA sec. 6313. En el documento, **se deben hacer constar los nombres y el modo de citación de los propietarios colindantes**. *Id.*

Al elaborar el plano de segregación, el agrimensor licenciado debe incluir las cabidas de los solares y **cualquier servidumbre de paso que se constituya para darle acceso a los solares**, así como cualquier faja o predio que se vaya a dedicar a uso público, si procede. Ello así, porque la finca segregada queda gravada por su procedencia con las cargas y gravámenes inscritos en la finca matriz de la cual fue segregada. A esos efectos, en la primera inscripción de la finca segregada se toma razón de dichas cargas o gravámenes. Véase, Art. 152 de la Ley Núm. 210-2015, 30 LPRA sec. 6226.

En fin, en la causa de autos, las apelantes quieren ejercer su derecho constitucional propietario a segregar sus predios. Sin embargo, el Estado ha establecido regulaciones específicas para este procedimiento, mediante la Ley Núm. 210-2015, entre otras fuentes legales. Por ello, el plano que pretende realizar el agrimensor Carrasquillo Rivera es el que éstas deben presentar ante la Oficina de Gerencia de Permisos o, en su defecto, al Municipio de Villalba, para la expedición de una resolución con su aprobación. De esta manera, las apelantes contarían con los permisos necesarios para otorgar la escritura pública de segregación e inscribirla en el Registro de la Propiedad. Véase, Art. 148(1)(3) de la Ley Núm. 210-2015, 30 LPRA sec. 6222 (1)(3). No obstante, las apelantes alegan afirmativamente que el proceso está detenido ante un reclamo de exclusividad sobre la servidumbre de paso en controversia, aun

cuando la mensura del gravamen debería constar en el plano de segregación, ya que los lotes a segregar, a su vez, podrían quedar afectados como predios sirvientes.

Somos del criterio que las apelantes sí alegaron un daño concreto y suficiente en Derecho para invocar el auxilio del TPI. Las alegaciones están vinculadas al derecho constitucional del disfrute de la propiedad y al supuesto impedimento de un tercero para dar cumplimiento a las leyes que regulan el procedimiento de segregación. Al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, estamos compelidos a adoptar como ciertas las aseveraciones bien alegadas. En esencia, que luego que la apelada fue citada por el agrimensor Carrasquillo Rivera, ésta reclamó el uso exclusivo de la servidumbre de paso, impidiendo la continuación del proceso de segregación de los predios, cuyo requisito *sine qua non* es el plano de mensura. Decididamente, esta controversia es real e inmediata y no se está solicitando una opinión consultiva, sino que amerita la intervención judicial, para que se declaren los derechos y las relaciones jurídicas entre las litigantes. Estimamos que la sentencia declaratoria que provee la Regla 59 de Procedimiento Civil, *supra*, sirve de herramienta profiláctica y adecuada. A esos fines, se podrá conceder el remedio que proceda: evitar el menoscabo de los derechos propietarios de todas las partes y dilucidar el rol de los predios con respecto a la servidumbre en controversia, de manera que el agrimensor Carrasquillo Rivera pueda mensurar las áreas requeridas para confeccionar el plano de segregación que exige la Ley Núm. 210-2015.

Huelga decir, que el procedimiento judicial puede continuar, sin que falte una parte indispensable. Contrario a lo resuelto, el transmisor de los predios, si bien podría servir de testigo, no es parte indispensable. Es evidente que las tres titulares de las fincas 1791, 5295 y 7219, a quienes concierne la servidumbre de paso, ya son

partes del pleito. Nótese que, de conformidad con las certificaciones registrales que obran en el expediente, la servidumbre de paso en cuestión evita que la finca de la apelada esté enclavada. En general, surge que el tramo se extiende desde la colindancia sur de la finca de la apelada, transita por los lindes de las fincas de las apelantes y culmina en la carretera.

En cuanto al **segundo señalamiento de error**, la parte apelante alega que la petición desestimatoria se convirtió en una solicitud de sentencia sumaria, ya que la apelada acompañó la petición con documentos. No es correcto.

Según esbozamos, la apelada invocó la Regla 10.2 de Procedimiento Civil, *supra,* y unió dos documentos a su moción dispositiva; a saber (1) Certificación Registral 2024-039336-CERT de la finca 1791; y (2) Certificación Registral 2024-039624-CERT de la finca 5295. Ambos son documentos acreditativos de las respectivas fincas de las apelantes.

De otro lado, en su parte dispositiva, el TPI aludió a la Certificación Registral 2024-020197-CERT de la finca 1791 y a la Certificación Registral 2024-027854-CERT de la finca 5295;[10] ambos documentos que las propias apelantes unieron a su escrito judicial de oposición. Estos anejos también constituyen certificaciones registrales de las fincas de las apelantes.

Evaluado lo anterior y el Derecho aplicable, opinamos que los documentos registrales que las partes litigantes unieron a sus escritos y que el TPI consideró en su dictamen no eran ajenos a sus respectivas alegaciones. Como reseñamos, en la reclamación civil, las apelantes incluyeron las descripciones registrales de los tres predios. La doctrina dicta que, para la resolución de una moción

---

[10] Como parte de la narración de los hechos, el TPI mencionó que la parte demandada y apelada incluyó la *Resolución* de ARPE y la Certificación Registral de la finca 4539.

desestimatoria, nada impide la consideración de documentos conocidos por las partes. Por el contrario, la conversión requiere que, a través de los documentos, una parte o varias sometan materias que no formaron parte de sus alegaciones; que el tribunal, en el ejercicio de su discreción, acoja los anejos y considere dichas materias noveles; y emita una determinación, sin la celebración de una vista en sus méritos, para facilitar la disposición del asunto ante su consideración. Esto no ocurrió.

En la presente causa, **ambas partes sometieron documentos que formaron parte de sus propias alegaciones, tanto de la *Demanda* como las consignadas en la *Contestación a Demanda*.** Es decir, la inclusión de las certificaciones provistas por las contendientes únicamente sirvió de eco y refuerzo de sus propios planteamientos. En estas circunstancias, la mera adición de documentos no introdujo materias nuevas, por lo que **no operó la conversión de la moción desestimatoria a una sentencia sumaria**. Más bien, los referidos anejos fungieron como *exhibits* **de las alegaciones** y, por consiguiente, se consideran parte de éstas, al palio de la Regla 8.3 de Procedimiento Civil, *supra.*

### IV.

Por los fundamentos expuestos, revocamos la *Sentencia* apelada. En consecuencia, devolvemos los autos judiciales ante la consideración del Tribunal de Primera Instancia, Sala de Ponce, para que dirima las controversias justiciables de las partes litigantes.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones